**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| ALVIN C. REYES, | DOCKET NUMBER |
| Appellant, | SF-0752-15-0065-I-1 |
| v. | |
| DEPARTMENT OF THE ARMY, | DATE: September 15, 2015 |
| Agency. | |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Anthony P.X. Bothwell, Esquire, San Francisco, California, for
the appellant.

Sarah Dawn Dobbs and Steven J. Shim, Schofield Barracks, Hawaii, for the
agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1       The appellant has filed a petition for review of the initial decision, which
affirmed his removal.  Generally, we grant petitions such as this one only when:
the initial decision contains erroneous findings of material fact; the initial
decision is based on an erroneous interpretation of statute or regulation or the

---

[1] A nonprecedential order is one that the Board has determined does not add
significantly to the body of MSPB case law.  Parties may cite nonprecedential orders,
but such orders have no precedential value; the Board and administrative judges are not
required to follow or distinguish them in any future decisions.  In contrast, a
precedential decision issued as an Opinion and Order has been identified by the Board
as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2    Prior to his removal, the appellant was employed as a Motor Vehicle Operator at the agency's Tripler Army Medical Center.  Initial Appeal File (IAF), Tab 7 at 11.  Effective October 4, 2014, the agency removed him on a charge of Fighting/Creating a Disturbance, based on a May 13, 2014 incident in which he engaged in a physical altercation with a coworker, C.A.  IAF, Tab 6 at 11, 42-44, Tab 7 at 42-44.

¶3    The appellant filed a timely appeal.  IAF, Tab 1.  He raised affirmative defenses of harmful procedural error and whistleblowing reprisal and further alleged that he had been subjected to a hostile work environment.  IAF, Tab 12.  In his prehearing submission, the appellant also listed discrimination as an issue, but he did not elaborate or specify a protected group.  IAF, Tab 14.

¶4    Following a hearing on January 14, 2015, the administrative judge issued an initial decision sustaining the removal action.  IAF, Tab 28, Initial Decision (ID).  She split the agency's charge into separate charges of Fighting and Creating a Disturbance and found that the agency proved both charges.  ID at 4-13.  She

further determined that the appellant failed to establish his harmful procedural error claim. ID at 14-16. Although she found that the appellant made a prima facie case of whistleblowing reprisal, she also found that the agency established by clear and convincing evidence that it would have removed the appellant in the absence of his whistleblowing activity. ID at 16-20. She noted that the appellant had previously filed an equal employment opportunity claim alleging that he was discriminated against based on his Filipino origin, but she found that he had failed to show that he was subjected to a hostile work environment or otherwise discriminated against on that basis. ID at 22-23. Finally, the administrative judge found that the agency's penalty determination was entitled to deference. ID at 23-26.

¶5    On petition for review, the appellant accuses the administrative judge of bias and makes numerous objections to her procedural rulings and findings of fact. Petition for Review (PFR) File, Tab 3.[2] He states that he has obtained new information since the close of the record, but he does not submit new evidence with his petition. *Id*. at 13-14. He again alleges harmful procedural error and whistleblowing reprisal, *id*. at 10-12, but if he intended to raise a discrimination claim below, he is no longer pursuing it. The agency has filed a response. PFR File, Tab 6.

## ANALYSIS

The administrative judge did not abuse her discretion in her rulings on witnesses and evidence.

¶6    An administrative judge has broad discretion to regulate the course of the hearing and to exclude evidence and witnesses which have not been shown to be relevant or material to the issues of the case. *Thomas v. U.S. Postal Service*,

---

[2] The February 20, 2015 initial decision erroneously indicated a finality date of March 20, 2015. IAF, Tab 28 at 27. The finality date was in fact March 27, 2015, i.e., 35 days after the issuance of the initial decision. *See* 5 C.F.R. § 1201.114(e). The appellant's amended petition for review, filed on March 26, 2015, was therefore timely.

[116 M.S.P.R. 453](#), ¶ 4 (2011).  A petitioning party seeking to reverse an initial decision on the basis of abuse of discretion must show that the abuse could have affected the outcome.  *See id.*

¶7        The appellant contends that the administrative judge abused her discretion on multiple occasions during the examination of witness J.L., who was the only other individual in the room during the altercation between the appellant and C.A. The first incident occurred during direct examination, shortly after J.L. had testified that the appellant grabbed C.A. by the jacket.  The agency representative asked J.L. to show on his own collar where C.A. was grabbed and to indicate whether the appellant used one or two hands.  J.L. answered verbally that the appellant used two hands and apparently provided a visual demonstration.  The administrative judge then stated, "Let the record reflect that the witness is using his right hand going up high on his right collar, and he's using his left hand to grab the center of his shirt just below his neck, and the two hands are rather close together."  At this point, the appellant's attorney objected that the agency representative had asked a compound question.  The administrative judge asked the appellant's attorney to identify the compound question, but he was unable to do so.  The administrative judge denied the objection.  Hearing Compact Disc (HCD) at ~15:45-17:15.

¶8        The appellant contends that the administrative judge abused her discretion by denying the objection to the alleged compound question and by stating facts about which she had no personal knowledge.  PFR File, Tab 3 at 9.  However, considering that the appellant's attorney was unable to identify the alleged compound question, it was hardly an abuse of discretion for the administrative judge to deny his objection.  Moreover, the administrative judge did not state

facts that were outside her personal knowledge. Rather, she provided a verbal description of the visual demonstration made by J.L.[3]

¶9        According to the appellant, the second alleged abuse of discretion occurred during recross, when the appellant's attorney was attempting to elicit testimony as to whether J.L., who was initially seated at a 90-degree angle from the appellant and C.A., had turned to look at C.A. and the appellant when the physical contact began. J.L. responded that he "was working at my report until [he] noticed more activity happening with [C.A.'s] jacket coming off and [he] turned and looked." The appellant's attorney stated, "So some activity occurred before you turned and looked, because you were focused on your report." The agency representative objected that the question had been asked and answered, and the administrative judge stated, "It's sustained, he's referring to the activity of [C.A.] taking [his] jacket off." After a pause of several seconds, the appellant's attorney stated, "I would have preferred [for] the witness to speak himself, but I have no further questions, your honor." HCD at ~30:45-31:45.

¶10       The appellant asserts that the administrative judge improperly prevented his attorney from eliciting "untainted" testimony as to whether J.L. actually saw the first physical contact between the appellant and C.A. PFR, Tab 3 at 9. He states that the administrative judge interrupted J.L. and contends that "[t]he judge's interruption, stating a fact of which she had no personal knowledge, asserting what she wanted the answer to be, was dumbfounding; it silenced the witness." *Id*. However, the audio transcript reveals that the administrative judge did not interrupt J.L. and did not state facts of which she had no personal knowledge.

---

[3] The appellant also contends that his attorney objected to a leading question, and the administrative judge failed to rule on the objection. PFR File, Tab 3 at 4. However, the audio transcript does not reflect that the appellant's attorney made such an objection during the exchange. Moreover, even if the administrative judge had permitted a leading question, the appellant has not provided any basis for believing that the substance of the answers would have been any different had they been elicited through nonleading questions. *See Sletten v. Department of the Air Force*, 2 M.S.P.R. 35, 40 (1980).

Rather, she correctly observed that J.L. had already testified that he turned to look after noticing the activity of C.A. removing his jacket.

¶11    The appellant also contends that the administrative judge improperly prevented either the appellant or proposed witness K.G., who completed the police report of the altercation, from providing rebuttal testimony concerning the May 13, 2014 incident.  PFR File, Tab 3 at 12-13.  However, K.G. was unavailable to testify, and the appellant's attorney did not request that the appellant be permitted to give rebuttal testimony concerning the altercation.  Rather, he requested that the appellant be called for rebuttal testimony concerning the events surrounding his prior discipline.  HCD at ~3:56-3:57.  The appellant also objects that the administrative judge cut him off when his attorney asked him whether he knew why the agency waited until February 2014 to propose discipline.  PFR File, Tab 3 at 11-12; *see* HCD (testimony of appellant).  We discern no error on the part of the administrative judge, who correctly observed that further testimony by the appellant on that issue would have been speculation.

¶12    In addition, the appellant contends that the administrative judge permitted the agency to withhold evidence from his attorney.  In particular, he objects that his attorney was not timely served with a hard copy of the appellant's April 14, 2014 written counseling, which the agency had submitted electronically on December 16, 2014.  PFR File, Tab 3 at 14-15; IAF, Tab 16, Exhibit (Ex.) 1.  The record reflects that, on January 12, 2015, the appellant's attorney filed a motion asking the administrative judge to exclude the counseling memorandum, which he had just received that day, or else continue the hearing date.  IAF, Tab 22.  The administrative judge denied the motion, noting that she had read the entire counseling memorandum to the appellant during the prehearing conference call.  IAF, Tab 23.  Moreover, there is no dispute that the appellant, who was a registered e-filer, was himself timely served with the agency's December 16, 2014 submission.  IAF, Tab 16.  The appellant also claims that his attorney never received a copy of a document referenced in a December 2, 2014 conference

summary. PFR File, Tab 3 at 14; IAF, Tab 12 at 2. The document in question, which the agency had initially provided in redacted form, was a clinical report of the appellant's May 13, 2014 visit to the examination room following the altercation. IAF, Tab 19. The record reflects that the agency submitted an unredacted copy of the report through the Board's e-Appeal Online System on January 6, 2015, *id.*, and there is no dispute that service was immediately provided to the appellant, *id.*

¶13  The appellant also asserts that the administrative judge improperly refused to admit into the record documentary evidence of a December 2014 medical examination that would confirm the extent of his long-term injuries. *Id.* at 19. However, the administrative judge did admit that documentation into the record and even cited to it in the initial decision. *See* HCD at 1:50; IAF, Tab 25, Ex. K; ID at 13 n.7.

The appellant has not shown that the administrative judge was biased.

¶14  The appellant further asserts that the administrative judge favored the agency in her rulings and failed to abide by the canons of judicial conduct. PFR File, Tab 3 at 14-15. In making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). We find that the appellant has failed to meet that burden.

¶15  The appellant contends that, during prehearing conferences, the administrative judge "arbitrarily denied requests by the appellant's attorney, who was new to the case, to be allowed reasonable time to review the case file and prepare for a hearing." PFR File, Tab 3 at 13. As a result, the appellant contends, his attorney did not have sufficient time to subpoena additional witnesses. *Id.* However, the summary of the December 1, 2014 prehearing conference does not indicate that the appellant made any request for additional time. IAF, Tab 12. The parties were advised that any objections to the accuracy

of the summary must be filed within 7 days of the date of the summary, *id.*, and no objections were filed.  There is also no indication that the appellant's attorney made a request for additional time in the December 18, 2014 prehearing conference, and, again, neither party filed a timely objection to the administrative judge's summary.  IAF, Tab 17.[4]

¶16      The appellant also objects that the administrative judge refused to let him wear sunglasses during the hearing, even though he explained to the administrative judge that he is sensitive to light, and allowed only a very slight dimming of the lights.  PFR File, Tab 3 at 15.  He further contends that the administrative judge spoke sarcastically to his attorney off the record, *id.* at 18, and "grinned and vigorously nodded her head" during his closing argument, "indicating her negative reaction," *id.* at 20.  We find no support for these allegations other than the unsworn statements of the appellant's representative, which do not constitute evidence.  *See Hendricks v. Department of the Navy*, 69 M.S.P.R. 163, 168 (1995).  Moreover, even if the administrative judge did engage in the alleged conduct, we do not find such actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

The appellant has not shown that the administrative judge erred in sustaining the charges.

¶17      The charge of Fighting, as described in the agency's table of penalties under definition (d) of Fighting/Creating a Disturbance, consists of "Hitting, pushing or other acts against another causing injury."  While provocation may serve as a mitigating factor in a penalty analysis, *see Douglas v. Veterans Administration*,

---

[4] On petition for review, the appellant belatedly objects to the accuracy of the administrative judge's December 19, 2014 summary of the December 18, 2014 conference.  PFR File, Tab 3 at 20.  However, the administrative judge clearly indicated that objections to the summary must be filed within 7 days or be deemed waived.

5 M.S.P.R. 280, 305 (1981), for purposes of determining whether the agency proved the charge, it is immaterial whether C.A. or the appellant instigated the altercation. The pertinent question at this stage is whether the appellant engaged in hitting, pushing, or other acts that caused C.A. injury.[5]

¶18  The administrative judge considered but did not credit the appellant's contention that he did not hit C.A. and that his only physical involvement was defensive in the form of a slow, gradual push. HCD (testimony of appellant). She instead gave credence to the version of events put forward by J.L., who testified that he saw the appellant partially block the exit as C.A. was trying to leave the room, then strike C.A, grab his jacket in a "choking manner," and hook his legs behind his in a "grappling move." HCD (testimony of J.L.); IAF, Tab 7 at 20-21; *see* IAF, Tab 7 at 29 (sworn statement of C.A. describing same grappling move). J.L. further stated that, during the verbal exchange that preceded the altercation, both men appeared prepared to fight. IAF, Tab 7 at 20.

¶19  On review, the appellant contests the administrative judge's credibility determination. Because the administrative judge did not rely on demeanor evidence, even implicitly, the Board is free to reweigh the evidence and substitute its own judgment on credibility issues. *Haebe v. Department of Justice*, 288 F.3d 1288, 1302 (Fed. Cir. 2002). However, we discern no error in the administrative judge's credibility determination.

¶20  The appellant asserts that, in finding that J.L. had no motive to be untruthful, the administrative judge "ignored" J.L.'s testimony that the appellant had once attacked his character. PFR File, Tab 3 at 5. However, the administrative judge did acknowledge J.L.'s testimony that the appellant had stated in a meeting that he had a "shady character." ID at 14 n.8; *see* HCD

---

[5] The police report of the incident (described as a "mutual affray") documented injuries to both the appellant and C.A. IAF, Tab 7 at 38. In particular, the appellant had scratches on both arms and contusions to his forehead and cheekbones, while C.A. had scratches on his neck. *Id*.

(testimony of J.L.). The administrative judge nonetheless found that J.L., who was not friends with C.A. either, had no bias against the appellant. The appellant's mere disagreement with that credibility determination does not warrant further review. *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133-34 (1980). Moreover, as the administrative judge noted, the appellant did not in the proceedings below specifically accuse J.L. of any motive to fabricate his testimony or statement. ID at 13 n.8; *see Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (the Board will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).

¶21        The administrative judge also noted that the appellant gave inconsistent accounts of the incident. In particular, she noted that, in his May 16, 2014 sworn statement, made 3 days after the incident, the appellant stated that he was not struck and instead received the bump on his head when he was pushed against the wall. IAF, Tab 7 at 56. In addition, when examined at the emergency room immediately following the incident, the appellant reported that he had been pushed against a wall and did not indicate that he had been struck. IAF, Tab 25, Ex. B. However, the appellant later changed his statement to claim that C.A. elbowed his head and that he believed this because he had heard it from an unidentified officer who had in turn heard it from another unidentified individual. IAF, Tab 7 at 50-51; HCD (testimony of appellant). The appellant further testified at the hearing that he did not remember what he stated at the hospital because he was dazed from losing consciousness. HCD (testimony of J.L.). However, the clinical report from the emergency room visit repeatedly states that the appellant did not suffer any loss of consciousness. IAF, Tab 25, Ex. 7.

¶22        On review, the appellant asserts that he has since learned the name of the officer who told him he knew that C.A. had struck him with his elbow. PFR File, Tab 3 at 13. However, the appellant does not provide a statement by that officer, but instead suggests that he be called as a witness in a potential future hearing.

Consequently, the appellant has not provided any actual new evidence that might warrant further review. The appellant also argues that his revised statement of May 19, 2014 is consistent with his testimony that he lost consciousness during the incident. *Id*. at 17-18. Be that as it may, the appellant's claim to have lost consciousness is contradicted by the medical record. IAF, Tab 25, Ex. B.

¶23 In sum, we discern no error in the administrative judge's decision not to credit the appellant's contention that his only physical involvement was defensive in the form of a slow, gradual push. Moreover, even if we were to find that C.A. struck the appellant with his elbow and the appellant lost consciousness as a result, this would not contradict a finding that the appellant participated in the fight and caused injury to C.A. Accordingly, we agree with the administrative judge that the agency appropriately sustained the charge of Fighting.

¶24 As for the charge of Creating a Disturbance, it is undisputed that a meeting between two agency employees was interrupted by the noise caused by the fighting between the appellant and C.A. and that they had to leave their meeting to break up the fight. The appellant thus was at least partially at fault for "[c]reating a disturbance resulting in an adverse effect on morale, production, or maintenance of proper discipline." IAF, Tab 6 at 61.

The administrative judge correctly found that the appellant did not establish his affirmative defenses of harmful procedural error and whistleblowing reprisal.

¶25 The appellant reiterates his claim that the agency committed harmful procedural error by violating Article 21, § 2, of the collective bargaining agreement. PFR File, Tab 3 at 12.[6] To prove harmful procedural error, the appellant must show that the agency committed an error in the application of its procedures that is likely to have caused it to reach a conclusion different from the

---

[6] In his rebuttal to the proposed removal, the appellant also alleged that the agency violated Article 5, § 2, and Article 21, §§ 3 and 4. IAF, Tab 6 at 25-27. He does not contest the administrative judge's finding that the agency did not commit harmful procedural error regarding these provisions. ID at 14-15, 16.

one it would have reached in the absence or cure of the error. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991); 5 C.F.R. § 1201.56(c)(3). On review, the appellant argues for the first time that the agency violated the provision when it took the disciplinary action that was later cited as an aggravating factor in the removal on appeal. PFR File, Tab 3 at 12. We decline to consider this argument because the appellant did not make it below, and he has not shown that it is based on new and material evidence not previously available despite his due diligence. *See Banks*, 4 M.S.P.R. at 271.

¶26    The appellant also asserts that the administrative judge improperly rejected his claim that he made protected disclosures. PFR File, Tab 3 at 12. He cites to a portion of the initial decision in which the administrative judge addressed the appellant's sworn statements of May 16 and 19, 2014, and noted that the appellant had not specified which statements he believed to be protected. ID at 19. However, the administrative judge proceeded to find that the appellant *did* make protected disclosures in both statements, specifically, allegations of battery at the hands of C.A. *Id*. Moreover, it is undisputed that the deciding official had knowledge of these disclosures, which took place less than 4 months before the removal action. Under the "knowledge/timing" test set forth at 5 U.S.C. § 1221(e)(1), this is sufficient to establish that the appellant's disclosures were a contributing factor in his removal. *Rubendall v. Department of Health & Human Services*, 101 M.S.P.R. 599, ¶ 13 (2006) (finding that an interval of less than 6 months between the disclosure and the personnel action satisfied the knowledge/timing test), *superseded on other grounds by statute*, Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465, *as stated in Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 6 (2014). Hence, as the administrative judge found, the dispositive question is whether the agency met its burden of proving by clear and convincing evidence that it would have taken the same action in the absence of the appellant's whistleblowing. *See* 5 U.S.C. § 1221(e)(2).

¶27     In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). Our reviewing court has further clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶28     In finding that the agency met its burden, the administrative judge considered the strength of the evidence for and against the agency's action, as discussed more extensively elsewhere in her decision. In addition, she considered the deciding official's testimony that he had no motive to retaliate against the appellant and that he had requested that the appellant put his complaints in writing so that he could investigate them. ID at 20; HCD (testimony of deciding official). The administrative judge also noted that C.A., who was not a whistleblower, also was removed. ID at 20. We discern no error in the administrative judge's ultimate finding that the appellant failed to establish his claim of whistleblowing reprisal.

<u>The administrative judge did not err in deferring to the agency's penalty determination.</u>

¶29     Where, as here, the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas*, 5 M.S.P.R. at 306. In making that

determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility but to ensure that management discretion has been properly exercised. *Id.* The Board will modify or mitigate an agency-imposed penalty only where it finds the agency failed to weigh the relevant factors or the agency's judgment clearly exceeded the bounds of reasonableness. *Omites v. U.S. Postal Service*, 87 M.S.P.R. 223, ¶ 9 (2000). Where mitigation is appropriate, the Board will correct the agency's penalty only to the extent necessary to bring it to the maximum reasonable penalty. *Lentine v. Department of the Treasury*, 94 M.S.P.R. 676, ¶ 6 (2003).

¶30 In evaluating the penalty, the Board will consider, first and foremost, the nature and seriousness of the misconduct and its relation to the employee's duties, position and responsibilities, including whether the offenses were intentional or frequently repeated. *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 282 (1998), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999) (Table). It is well established that fighting in the workplace is a serious offense. *See Grandison v. Department of the Navy*, 7 M.S.P.R. 301, 303-04 (1981). Here, the deciding official found that fighting at work damages morale and creates a hostile work environment. IAF, Tab 6 at 48; HCD (testimony of deciding official).

¶31 As for whether the conduct was intentional, the appellant contends that C.A. was the aggressor. J.L.'s testimony indicates that both individuals made challenging remarks, and, as the appellant correctly observes, C.A. admitted to confronting the appellant more than once during the episode. However, J.L. also testified that both men appeared prepared to fight, and the appellant blocked C.A.'s path as he was trying to leave the room. Hence, while C.A. played a role in provoking the confrontation, the record supports the deciding official's view that the appellant "made a conscious decision to fight." IAF, Tab 6 at 58. For the same reasons, the administrative judge correctly found that provocation was not a significant mitigating factor.

¶32      Regarding other pertinent *Douglas* factors, the penalty of removal is consistent with the agency's table of penalties, which provides that a first offense of hitting, pushing, or other acts against another causing injury is subject to a penalty of reprimand to removal. IAF, Tab 6 at 61. Moreover, as the administrative judge noted, the penalty was consistently applied by the agency, as shown by the removal of C.A. The appellant began employment with the agency on April 25, 2011, IAF, Tab 8 at 22, and so his service was not particularly lengthy. The deciding official further found that the appellant's misconduct had greatly diminished management's confidence in the appellant's ability to perform his assigned duties. IAF, Tab 6 at 58.

¶33      The deciding official also considered the appellant's prior discipline, namely, an April 14, 2014 written counseling, reduced from a proposed 5-day suspension, on charges of inappropriate behavior and inappropriate use of government equipment. IAF, Tabs 16, 26; *Mitchell v. U.S. Postal Service*, 32 M.S.P.R. 362, 365 (1987) (finding that a prior written counseling may serve as an aggravating factor). The first charge described in the notice of proposed suspension, issued on February 12, 2014, concerned the appellant's conduct toward a trolley customer on July 22, 2013. The second charge involved the appellant's misuse in 2013 of closed-circuit television camera controllers to determine if a coworker, D.K., was leaving early, and a September 2013 incident in which the appellant used the police radio to broadcast his argument with D.K. IAF, Tab 26.

¶34      On review, the appellant seeks to litigate the merits of his prior discipline. PFR, Tab 3 at 3, 9-11. However, the Board's review of a prior disciplinary action is limited to determining whether that action is clearly erroneous, if the employee was informed of the action in writing, the action is a matter of record, and the employee was permitted to dispute the charges before a higher level of authority than the one that imposed the discipline. *Bolling v. Department of the Air Force*, 9 M.S.P.R. 335, 339-40 (1981). It is undisputed that the appellant was informed

of the proposed suspension in writing and had an opportunity to respond to the proposed action personally and in writing.  IAF, Tab 26.  Moreover, the record does not establish that the resulting written counseling was clearly erroneous.

¶35      On review, the appellant contends that the administrative judge failed to consider the extent of his injuries as a mitigating factor.  PFR File, Tab 3 at 6-7.  He asserts that, since the May 13, 2014 incident, he has suffered from debilitating headaches and a return of the post-traumatic stress disorder symptoms from which he had previously recovered.  *Id*.  He further states that medical examinations conducted since December 2014 would confirm his long-term injury, although he does not submit any additional medical documentation with his petition.  *Id*. at 14. We find that the appellant's injuries do not serve to mitigate his misconduct in willingly participating in the fight in the first instance.

¶36      We also have considered the appellant's claim that he was subjected to a hostile work environment as a result of his complaints concerning coworkers leaving work early and that this environment precipitated the altercation with C.A.  Harassment and unusual job tensions may serve as mitigating factors in some cases.  *See Douglas*, 5 M.S.P.R. at 305.  However, in light of our finding that the appellant willfully engaged in the fight with C.A., we find that, even if the appellant suffered from a hostile work environment prior to the altercation, the penalty of removal remains within the bounds of reasonableness.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.  There are several options for further review set forth in the paragraphs below.  You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request review of this final decision on your discrimination claims by EEOC, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color,

religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:              _____
                           William D. Spencer
                           Clerk of the Board

Washington, D.C.